UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER OUELLETTE,

           Plaintiff,                                 Case No. 11-13082

                                                    Paul D. Borman

v.                                          United States District Judge

FOUNTAINVIEW OF MONROE
and JOANN MADDUX,

           Defendants.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 27) and (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 28)

      This matter is before the Court on the parties' cross-motions for summary judgment. Defendants Fountainview of Monroe and Joann Maddux ("Defendants") filed a Motion for Summary Judgment (ECF No. 27), to which Plaintiff filed a response (ECF No. 35) and Defendants replied (ECF No. 38). Plaintiff filed a Motion for Summary Judgment (ECF No. 28), to which Defendants filed a response (ECF No. 34) and Plaintiff replied (ECF No. 37). The Court held a hearing on August 1, 2013. For the reasons that follow, the Court GRANTS Defendants' motion, DENIES Plaintiff's motion and DISMISSES Plaintiff's Complaint with prejudice.

**INTRODUCTION**

      Plaintiff claims that she was terminated from her employment as a Licensed Practical Nurse (LPN) at Defendant Fountainview of Monroe ("Fountainview") in violation of the Family Medical Leave Act, 29 U.S.C. § 2612 ("FMLA"). Plaintiff claims that she gave notice to Fountainview of

her intent to take FMLA leave to care for her mother who had been diagnosed with metastatic cancer and that she was terminated by Fountainview in response to this request.  At the time of her August 10, 2009 termination, Plaintiff had just returned to work pursuant to an arbitrator's decision awarding Plaintiff reinstatement (but no back pay) to mitigate Fountainview's October, 2008 termination for falsification of reports in violation of Fountainview's code of conduct.  When terminated by Fountainview in October, 2008, Plaintiff had just returned from an eight month FMLA leave for personal medical reasons.

Fountainview asserts that Plaintiff was not eligible to request FMLA leave at the time of her termination on August 10, 2009, because she had not worked 1,250 hours in the previous 12 month period preceding her request for leave and thus was not an "eligible employee" as defined under FMLA.  The Court agrees and finds that at the time of her August, 2009 termination, Plaintiff was not an eligible employee under the FMLA.

## I.   BACKGROUND

Defendant Fountainview is a skilled nursing and rehabilitation care facility which provides long and short term care.  Plaintiff began working for Fountainview in 1995 as an LPN.  (Def.'s Mot. Ex. A, May 30, 2012 Deposition of Heather Ouellette 10.)  Plaintiff was responsible for providing care and treatment for Fountainview's resident patients.  Plaintiff received a copy of the Fountainview Employee Handbook that contains an attendance policy requiring, among other things, that employees (1) provide a doctor's certification for any illness that requires an absence of over three consecutive days and (2) call a supervisor at least 2 hours before the start of a shift if that employee intends to be absent from that shift.  (Ouellette Dep. 41-42, 46-48; Def.'s Mot. Ex. B, Employee Handbook.)  The call in policy requires a call to a supervisor for each day that the

2

employee will be absent unless other arrangements are made to excuse the absence. A failure to call will result in a finding that the employee has failed to show for work. The Employee Handbook explains that absence from work for one workday without notice is considered a "no call, no show" and that discharge for a "no call, no show" is "the standard practice of the facility." (Def.'s Mot. Ex. B, Employee Handbook 11.)

The Employee Handbook also explains Fountainview's FMLA policy and explains that eligible employees are entitled to request leave to care for a spouse, child or parent with a serious health condition. (*Id*. at 23.) The policy explains that an eligible employee under FMLA is one who has worked 1,250 hours over the 12 month period preceding the request for leave. *Id*. There is no dispute that this was the policy, that Plaintiff was aware of this policy and that Plaintiff did not work at the facility for 1,250 hours in the 12 months preceding her termination in August, 2009.

Plaintiff was also a member of AFSCME Council 25 beginning in 2004 and was elected Union President in 2004. (Ouellette Dep. 54.) As a union member, Plaintiff's employment was also governed by the Collective Bargaining Agreement ("CBA") which required that requests for leaves of absence be made in writing to an employee's department head. (Def.'s Mot. Ex. C, CBA 22-23.) During her employment with Fountainview, Plaintiff availed herself of the leave policies more than ten (10) times, returning to her work as an LPN after each requested leave. (Ouellette Dep. 60-92.) Her last leave of absence, which was granted in January, 2008, lasted more than eight months after being extended at Plaintiff's request approximately eight (8) times. (Ouellette Dep. 89; Def.'s Mot. Ex. D, Ouellette Leave Paperwork.)

Following her extended leave in 2008, Plaintiff returned to work and was assigned to the midnight shift, an assignment which she grieved, but her grievance did not result in a change of her

3

shift. Within weeks of returning, Plaintiff submitted another request for a leave of absence indicating that she had a previous commitment that required her to be off work on Friday, October 3 and Saturday, October 4, 2008. (Def.'s Mot. Ex. E, 9/29/08 Letter.) She also requested to be off work on October 7, 2008 for a surgical procedure and to be excused the day before, October 6, 2008, to prepare for the procedure. (*Id*.) Plaintiff was informed by her supervisor, Ms. Maddux, that she would have to find coverage for her scheduled shifts on October 3 and 6. Plaintiff did not find coverage and reported to work on October 7, 2008, with a doctor's note excusing her from work October 3-6, 2008. (Def.'s Mot. Ex. E, 2.) Maddux accepted the note and did not impose discipline for the days missed.

Soon after Plaintiff returned to work, Ms. Maddux was informed that Plaintiff in fact was out at a nightclub until 2 a.m. on October 3, 2008 and that Plaintiff decided to skip the commitment that she had on October 4, 2008 (a 2 hour drive with her child to visit relatives) for which she had been excused from work. Plaintiff did not deny that she had spent the evening of October 3, 2008 at the nightclub with friends, as photographs posted on Facebook confirmed, and stated that she never represented to Ms. Maddux that "she was bed ridden." (Ex. F, Employee Counseling Record and Termination Notice.) Plaintiff was terminated on October 20, 2008, for falsifying a report of an absence in violation of the Fountainview Code of Conduct. (*Id*.)

Plaintiff grieved her October 20, 2008 termination and requested in arbitration a "make-whole" award including reinstatement, back wages, full seniority and benefits. (Def.'s Mot. Ex. G, Arbitrator's Opinion/Award 13.) The Arbitrator began his Opinion with the following comment:

> This situation lends itself to an analysis somewhat singular in that the classic comment to two disputants lend itself: "You are right and you are right." The only part remaining for the Arbitrator is to share the analysis and declare where each party was not quite right.

4

Def.' Mot. Ex. G, Arbitrator's Opinion 13.

The Arbitrator noted that Plaintiff had requested October 4, 2008 off to drive with her child two and half hours to visit relatives for an important family function. (*Id*. 14.) The Arbitrator presumed that Plaintiff had requested her midnight October 3, 2008 shift off so that she could properly rest for the drive. (*Id*.) The Arbitrator chastised Plaintiff for her "ill-advised" behavior in night-clubbing with her friends until 2:00 in the morning when she had represented to her employer that she was unable to work at that time: "What possessed the Grievant to carry on at the club in such a manner as she had indicated? She cannot be on duty, but can be found at the club, when basic logic suggests otherwise," concluding that "her behavior at the club - if she had to be there at all - was ill advised and that is the kindest expression this Arbitrator can put forth in this regard." (*Id*. 15, 17.) The Arbitrator further concluded, however, that Fountainview could have conducted a more thorough investigation before terminating Plaintiff to determine the reason why Plaintiff was unable to work yet out night-clubbing with friends, citing Plaintiff's 13 year "unblemished" tenure with Fountainview as entitling her to perhaps a lesser penalty:

> The Grievant's presence and behavior at the club was not the smartest. Such activity being photographed in the presence of and with participating colleagues employed by the same employer, would certainly be the last thing to be kept a secret from the Employer. To conclude the Grievant feigned her trip to be off work to party with her colleagues would need a more thorough investigation and more correlative evidence to sustain a charge of dishonesty. Poor judgment; emotional looseness; irrationality; lack of allegiance; perhaps, but not dishonesty.
>
>         \*                 \*                 \*
>
> In consideration of the entire situation the Arbitrator does not feel the Grievant has behaved in this matter entirely with clean hands - not malicious, but ill-advised. In retrospect, especially after a prolonged medical leave, she had little reason to impose another delay the nature of which she offered in response to her call of employment to duty.

> However, the lack of a thorough investigation which could have either substantiated the just cause basis for the major penalty of termination or perhaps exonerate her from any charges of dishonesty of falsification of reports, cause this Arbitrator to mitigate the extreme discipline of discharge to suspension without any retroactive pay, and have her returned to duty to resume her otherwise exemplary record as a committed employee of the establishment under the rules of management in accordance with the Collective Bargaining Agreement and its Code of Conduct.

(*Id*. at 20.) The Arbitrator awarded Plaintiff reinstatement at her rate of pay as an LPN and "all other benefits and seniority shall be restored retroactive to the former date of termination." (*Id*. 21.) The Arbitrator did not award back pay, did not direct that Plaintiff be "made-whole" and did not conclude that Fountainview had acted unlawfully, only that they had imposed a punishment "perhaps" too severe without conducting a thorough investigation. The Arbitrator "mitigated" the punishment without any finding that Fountainview or Plaintiff had acted unlawfully.

In accordance with the Arbitrator's directive, Fountainview issued a letter to Plaintiff instructing her to report to work on July 9, 2009 at 6:45 a.m. (Def.'s Mot. Ex. I, June 30, 2009 Letter.) Plaintiff responded that she would be unable to report to work that day because she was a witness at an NLRB hearing and was given a new start date of July 14, 2009, which Plaintiff explained she would be unable to comply with due to the ongoing testimony at the NLRB hearing. (Def.'s Mot. Ex. I, July 7, 2009 Letter with Plaintiff's July 10, 2009 Response.) Ultimately Plaintiff was given the time off until the conclusion of the NLRB hearing on July 15, 2009. In the meantime, however, on July 7, 2009, Plaintiff grieved her proposed shift assignment and grieved the fact that she was going to be required to attend "excessive orientation." (Def.' Mot. Ex. J, Grievance.)

Plaintiff was advised to report back to work on July 16, 2009. On July 15, 2009, Plaintiff spoke with Ms. Maddux and informed her that she would not be able to report to work on July 16, 2009 because she needed to attend a doctor's appointment with her mother. (Def.'s Mot. Ex. K,

June 12, 2012 Deposition of Joann Maddux 23; ECF No. 28, Pl.'s Mot. Summ. Judg. Ex. 5, Pl.'s Chronology of Events.)  Plaintiff testified that on this date she told Ms. Maddux that her mother likely had terminal cancer and that Ms. Maddux told Plaintiff to take off as much time as she needed to take care of her mother.  (Ouellette Dep. 190-191).  Ms. Maddux also informed Plaintiff to bring in documentation to prove that she was attending a doctor's appointment with her mother on the requested July 16, 2009 date.  (Def.'s Mot. Ex. A, Ouellette Dep. 125, 139.)  Plaintiff did not report to work on July 16, 2009 and did not provide a notice or call in her absence.

On July 17, 2009, Fountainview Payroll/HR Employee Karen Rouleau spoke with Plaintiff and instructed her to report Monday, July 20, 2009 to fill out new orientation paperwork.  (ECF No. 28, Pl.'s Mot. Ex. 6, Fountainview Phone Records.)  Plaintiff informed Ms. Rouleau that she would not be able to come in the morning on July 20, 2009 but she would be in later that afternoon.  (*Id.*)  On July 20, 2009, at 4:15 in the afternoon, just before leaving for the day, Ms. Rouleau informed Ms. Maddux that Plaintiff had not come in to fill out her orientation paperwork.  (*Id.*)  When Ms. Rouleau returned to work on July 21, 2009, she retrieved from her phone a voicemail from Plaintiff stating that she was still with her mother.  (*Id.*)  Ms. Rouleau later learned that Plaintiff had come in on July 20, 2009, after Ms. Rouleau had gone for the day, and spoken with Ms. Maddux.  (*Id.*; Def.'s Mot. Ex. K, Maddux Dep. 53, Def.'s Mot. Ex. I 4.)

On the afternoon of July 20, 2009 when Plaintiff spoke with Ms. Maddux, she explained that she could not start work on July 21, 2009 due to her mother's illness and the need to help care for her mother.  Ms. Maddux had Plaintiff put this request in writing, which Plaintiff did, explaining: "I am unable to start work on July 21, 2009. I realize that my position has been returned to me per the decision of the Arbitrator. I am requiring personal leave for the recent and apparently on-going

serious illness of my mother, who is presently hospitalized." (Def.'s Mot. Ex. A, Ouellette Dep. 131; Pl.'s Mot. 4, Ex. 7.)  Ms. Maddux testified that she told Plaintiff when they met on July 20, 2009 that Ms. Maddux was not inclined to grant Plaintiff any further leave but that she would review the request with administration and legal counsel and get back to Plaintiff.  (Maddux Dep. 54.)  Plaintiff testified that at this meeting on July 20, 2009, Plaintiff was not instructed by Ms. Maddux to do anything further in regard to her request for leave and was not aware that she was scheduled to report to work on July 21, 2009.  (Ouellette 193.)  Plaintiff did not report to work on July 21, 22 or 23, 2009 and did not call or show.  (Maddux Dep. 64-66.)

On July 24, 2009, Ms. Maddux wrote a letter to Plaintiff recounting her recollection of what transpired at the meeting on July 20, 2009 with Plaintiff, characterizing Plaintiff's July 20, 2009 handwritten note as a request for leave, asking Plaintiff to support her request for leave with documentation of medical necessity and to explain her absences from work (which were then being considered no call, no shows) and her failure to submit the requested paperwork for her July 16, 2009 absence due to a doctor's appointment with her mother.  (Def.'s Mot. Ex. I, July 24, 2009 Letter from Joann Maddux.)   The letter gave Plaintiff until July 30, 2009 to respond to Fountainview, addressing her absences and failures to provide requested documentation, specifically requiring medical certifications supporting her request for leave and her inability to report for work July 21-23, 2009, as well as documentation supporting her need to be at a doctor's appointment with her mother on July 16, 2009.  (*Id.*)

On July 29, 2009, Plaintiff responded to Ms. Maddux's July 24, 2009 letter, disputing that Ms. Maddux had asked for anything beyond the handwritten note she provided on July 20, 2009 and contesting that Ms. Maddux had said anything to make Plaintiff believe she would be a "no call, no

8

show" after July 21, 2009 if she did not provide further documentation or call in each day she intended to be absent. (Def.'s Mot. Ex. N, July 29, 2009 Letter from Heather Ouellette.) Plaintiff explained that when she came in on July 20, 2009 to ask for personal leave, she did not know that she needed to sign orientation paperwork because she had no idea when her start date would be. She also disputed that Ms. Maddux told her when they met on July 20, 2009 that her request for leave was not granted. Plaintiff stated that Ms. Maddux told her to take as much time as she needed to care for her mother and to let Ms. Maddux know when she was ready to start work. (*Id.*) Plaintiff stated that she thought that her leave request had been granted but she attached to her letter a July 30, 2009 letter from Dr. Soofi, M.D. explaining that Heather Ouellette had been overseeing the care of her mother who was a patient of his who was admitted to the hospital on October 16, 2009 with widespread metastatic cancer and a poor prognosis. (Def.'s Mot. Ex. N, July 30, 2009 Letter from Dr. Mohamed Soofi.) The letter explained that Plaintiff would "be continuing to oversee the care of her mother after her mother's discharge from the hospital that day," July 30, 2009. (*Id.*) Plaintiff hand delivered the July 29, 2009 letter to Ms. Maddux on July 30, 2009 and Ms. Maddux accepted the letter without comment and never requested any further documentation from Plaintiff. (Ouellette 136, 207-08.)

In response to Plaintiff's July 29, 2009 letter, Ms. Maddux contacted Mr. Antonio Oddo, Fountainview's manager for payroll and human resources. Mr. Oddo calculated the hours worked by Plaintiff during the 12 month period preceding her July, 2009 request for leave to determine if she was eligible for a personal or FMLA leave. (Def.'s Mot. Ex. O, June 29, 2012 Certification of Antonio Oddo.) Mr. Oddo concluded that from July 2008 through July 2009 Plaintiff worked only 114 hours and did not have the 1250 hours required for eligibility under FMLA. (*Id.*) Plaintiff does

9

not contest Mr. Oddo's calculations of her hours worked.  (Ouellette 119-20; Def.'s Mot. Ex. P, Pl.'s

Responses to Requests to Admit.)

On August 10, 2009, after confirming that Plaintiff was not eligible for leave, Ms. Maddux

issued a letter terminating Plaintiff's employment for (1) failing to submit documentation that she

was present with her mother at a doctor's appointment on October 16, 2009, (2) failing to offer any

explanation for her failure to complete her orientation paperwork, (3) failing to contact the facility

for her scheduled shifts, which resulted in Plaintiff being considered a no call, no show.  (Def.'s

Mot. Ex. Q, August 10, 2009 Termination Letter.)  The letter also advised Plaintiff that she was not

eligible for FMLA leave and had no personal time banked.  (*Id.*)

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim,

or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after

the close of all discovery," unless a different time is set by local rule or court order.  Fed. R. Civ.

P. 56(b).  Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Of course, [the moving party]

always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

issue of material fact." *Celotex*, 477 U.S. at 323.  *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536

(6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact

"would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce

11

more than a scintilla of evidence to survive summary judgment).  "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party."  *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 759 (6th Cir. 2010).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

"In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party." *Id*. (alteration in original) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) and *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).

## III.   ANALYSIS

Plaintiff does not dispute that she worked only 114 hours in the 12 months preceding her July, 2009 request for leave, but she argues that the Arbitrator's Award of reinstatement, with full seniority and benefits, qualifies her hours not worked during her time off following her October, 2008 termination as "service hours" for purposes of calculating her FMLA eligibility.  It is not

12

disputed that to be eligible for leave under the FMLA, an employee must have worked the required 1,250 hours for her employer in the 12 months prior to the requested leave. *See* 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a) (requiring that an employee must have been employed for the preceding twelve months by the relevant employer and must have served at least 1,250 "hours of service" during that 12 month period). In calculating the "hours of service," the FMLA incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; 29 U.S.C. § 2611(2)(C). Section 7 does not define "hours of service," but sets forth the meaning of "regular rate," which serves as the principle guide for FLSA overtime calculations. *Ricco v. Potter*, 377 F.3d 599, 604 (6th Cir. 2004). Under § 7 of the FLSA, "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee," and expressly excludes several types of compensation not made for hours worked, such as "vacation, holiday, illness . . . or other similar cause." 29 U.S.C. § 207(e). Plaintiff in *Ricco* had prevailed against his employer in an arbitration and been awarded back pay, benefits and seniority. When he sought FMLA leave shortly after his return to work, his employer argued that he did not qualify because he had not worked 1,250 hours in the preceding 12 month period due to his absence occasioned by his grievance and arbitration. Plaintiff argued that the time that he would have worked had he not been unlawfully terminated, for which he had been awarded back pay in arbitration, should count as "hours of service" for purposes of FMLA. Plaintiff in *Ricco* argued that if an "employee is awarded back pay, accompanied by equitable remedies (i.e. full back pay with seniority and benefits, or a 'make whole' remedy), the hours the employee would have worked if not for the action which resulted in the back pay period, [should be] counted as work hours for the 1250 work hour eligibility requirement under the Family Medical Leave Act (FMLA)." 377 F.3d at 601. The Sixth Circuit

13

agreed, holding that  hours that an employee is unable to work for his employer due to the

employer's unlawful conduct in wrongfully terminating the employee,  count as "hours of service"

for purposes of calculating FMLA eligibility:

> We conclude that time that an employee would have worked but for her unlawful termination is not an "other similar cause" within the meaning of § 207. Such hours are different from occasional hours of absence due to vacation, holiday, illness, and the employer's failure to provide work, etc., in that they are hours that the employee wanted to work but was unlawfully prevented by the employer from working. Section 207 does not clearly prevent such hours from counting, and the purpose of the FMLA's hours-of-service requirement is properly served by including these hours. In such cases, the employer's unlawful conduct has prevented the employee from satisfying the hours-of-service requirement. Moreover, denying employees credit towards the hours-of-service requirement for hours that they would have worked, but for their unlawful termination, rewards employers for their unlawful conduct. We conclude that neither the FMLA nor the FLSA addresses directly the situation in this case involving hours that an employee would have worked but for her unlawful prior termination by her employer.
>
> The goal of a make-whole award is to put the employee in the same position that she would have been in had her employer not engaged in the unlawful conduct; this includes giving the employee credit towards the FMLA's hours-of-service requirement for hours that the employee would have worked but for her unlawful termination. The district court must determine in the first instance the number of hours that Ricco would have worked but for her unlawful termination in order to ascertain Ricco's eligibility under the hours-of-service requirement for FMLA leave.

*Ricco*, 377 F.3d 605-06.

Plaintiff agrees that the determination of her eligibility for FMLA leave turns on the meaning

of "hours of service."  (ECF No. 28, Pl.'s Mot. 13.)  She argues that in ordering Fountainview to

reinstate Plaintiff's "benefits and seniority" retroactive to the date of termination, the Arbitrator

intended that the award be the equivalent of a "make whole" award, despite the fact that back pay

was expressly not awarded.

It is clear from *Ricco*, and cases that interpret it, that the touchstones for defining hours not

actually worked as "hours of service" are (1) a determination that the employer acted *unlawfully* in

14

causing the plaintiff's inability to serve and (2) that the plaintiff have been awarded remuneration, or back wages, as part of a "make whole" remedy for the employer's unlawful conduct. *See Mutchler v. Dunlap Memorial Hosp.*, 485 F.3d 854, 859 (6th Cir. 2007) ( "Of course, the critical point in Ricco was that the employer *wrongfully terminated* the plaintiff, [and] the plaintiff received a make-whole award.") (emphasis in original). In this case, there is neither. In this case, there was no "make-whole" award, Plaintiff was expressly not awarded back pay and there was no finding that her employer engaged in unlawful behavior. Rather, both Plaintiff and Fountainview were found to have been "not quite right" and the "mitigation" in the punishment was awarded not because the Arbitrator concluded that Fountainview had acted unlawfully in terminating Plaintiff but because a better investigation might have made it more clear that termination was appropriate - or might have determined that it was not. But there was no finding of unlawful conduct and no award of remuneration in the form of back wages. Plaintiff was not "made whole" and provides no authority for the proposition that a retroactive reinstatement of seniority and benefits, without an award of back wages, is the equivalent of a make whole award and a finding of unlawful conduct.[1]

_____

[1] The Court rejects Plaintiff's argument that the failure to notify her that she was not eligible for FMLA leave was in and of itself a violation of the FMLA. Plaintiff argues that "[t]he eligibility provision of § 825.110(d), which refer directly to 29 C.F.R. § 825.300(b)(1), is at play here." (ECF No. 37, Pl.'s Reply 4.) However, the Sixth Circuit, along with several other circuits, has concluded that imposing liability under FMLA for actions taken with respect to an employee who is not eligible for FMLA leave impermissibly broadens the FMLA eligibility requirements. *Davis v. Michigan Bell Telephone*, 543 F.3d 345, 353-54 (6th Cir. 2008) (holding that "the notification requirements in the latter provision [§ 825.110(d)] are of no aid to Davis because they are invalid due to the fact that they impermissibly expand FMLA eligibility beyond the parameters established in 29 U.S.C. § 2611(2)"). Because Plaintiff is ineligible under the FMLA, she is not entitled to the protections of the FMLA, including its notice provisions, and her FMLA claim fails. Any other conclusion would be inherently inconsistent with the widely accepted requirement that a plaintiff is not entitled to relief under the FMLA absent a showing of actual prejudice as a result of an alleged violation. *See Austin v. Fuel Systems, Inc.*, 379 F. Supp. 2d 884, 899 (W.D. Mich. 2004) (" In order to recover under the FMLA, an employee must prove that he or she was actually prejudiced by an employer's

Importantly, while eligibility is an actual element of the *prima facie* case in an interference claim, the Sixth Circuit has held that the eligibility requirement also applies in retaliation claims. *See  Humenny v. Gentex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (holding that FMLA's eligibility requirement applies to all FMLA claims, including retaliation claims, which are premised upon plaintiff's "rights" under the FMLA, which are non-existent for a non-eligible employee).  The Court concludes that Plaintiff was not an eligible employee under the FMLA on July 20, 2009, and therefore her interference and retaliation claims under FMLA fail.[2]

**IV.    CONCLUSION**

Accordingly, the Court GRANTS Defendants' motion for summary judgment, DENIES Plaintiff's motion for summary judgment and DISMISSES Plaintiff's Complaint with prejudice. IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated:  September 26, 2013

---

violation.") (quoting  *Ragsdale v. Wolverine World Wide*, 535 U.S. 81, 90 (2002)).

[2]  Because the Court finds that Plaintiff was not an eligible employee at the time she requested FMLA, it need not address further the merits of Plaintiff's FMLA claims.

16

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 26, 2013.


s/Deborah Tofil _____
Case Manager